UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

Albert Percy, Percy Jobs & Careers, et. al.,

                                      Plaintiffs,

-against-

D & D Metal Work Inc., et. al.,

                                      Defendants.

**DECLARATION OF KAMI Z. BARKER**

No. 21 CV 02182 (NGG)(SJB)

------------------------------------------------------------------------x

**KAMI Z. BARKER** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

    1.    I am an Assistant Corporation Counsel in the office of Georgia M. Pestana, Acting Corporation Counsel of the City of New York, attorney for *amicus curaie*, the City of New York, in the above-captioned action. I submit this declaration in support of the Court's intention to refer plaintiffs' counsel, James Kernan (hereinafter "Kernan"), to the disciplinary committee. This declaration is based on the books and records of the City of New York, the public record, and personal knowledge acquired from hundreds of hours of investigating Kernan and plaintiffs' unethical behavior, including interviewing multiple individuals with knowledge of the underlying facts.

## FACTUAL BACKGROUND

    2.    On or about May 14, 2020, the New York City School Construction Authority ("SCA" est. circa 1989), the New York City Department of Design and Construction ("DDC" est. circa 1996), and numerous SCA and DDC contractors received, by e-mail from Kernan's office, letters with copies of three separate complaints by the purported "Percy class" styled as "Private Attorney General Actions." See example of one of the letters to an SCA contractor,

dated May 27, 2020, annexed hereto as Exhibit "A;" see also Plaintiff's purported complaints, annexed hereto as Exhibit "B." The letters threatened legal action via the enclosed voluminous pleadings and claimed that Percy was the class representative for a class of minority construction workers that won a federal judgment and settlement. They requested that recipients contact Kernan and retain Percy's services to avoid legal action, and, like the action herein, these unfiled and improperly served pleadings, attempted to relitigate the claims brought in Percy v. Brennan 73-CV-4279 (CM). Moreover, they allegedly sought to enforce the 1974 judgment of Percy v. Brennan, 384 F. Supp. 800 (S.D.N.Y. 1974), against City agencies and their contractors. However, the City was never party to the initial case, and even if it had been, there was never any judgment or settlement to enforce.

**A. History of Percy v. Brennan**

    **a. Political Background**

3. In 1973, the U.S. Labor Secretary, Peter J. Brennan, issued a memorandum, referred to as the "Brennan memorandum," which stated that federal contractors were not required to meet more stringent local and State equal employment measures above what the federal government directed in § 202(1) of Executive Order 11246 of 1965. 30 Fed. Reg. 12,319 (1965). At the same time, New York State issued the "New York Plan," which directed all federal contractors to annually hire and train 800 to 1,000 minority workers. This plan was accepted by the federal government, and, therefore, the Brennan memorandum did not exclude contractors from their New York Plan obligations. See "CITY SEES THREAT IN BRENNAN MEMO," available at https://www.nytimes.com/1973/08/21/archives/city-sees-threat-in-brennan-memo-labor-secretary-would-bar-funds-to.html (last visited on June 9, 2021).

4. Meanwhile, the City of New York passed its own affirmative action plan under the Lindsay administration, called the "Mayor's Plan." The Mayor's Plan went further than the New York Plan or Executive Order 11246 to ensure a more diverse workforce. The City's plan directed all government contractors to hire one minority worker for every four workers they hired. The Mayor's Plan was rejected by the federal government, and the State felt that it was too stringent. So, when the City applied for federal funding to renovate two sewage treatment plants, it was denied as a result of this political squabble. See "CITY SEES THREAT IN BRENNAN MEMO," available at https://www.nytimes.com/1973/08/21/archives/city-sees-threat-in-brennan-memo-labor-secretary-would-bar-funds-to.html (last visited on June 9, 2021).

### b. Resulting Federal Litigation

5. Due to the unfair withholding of federal funding, the City sued New York State and the federal government for wrongfully enforcing the Brennan memorandum and the New York Plan, thereby preventing the enforcement and authorization of the Mayor's Plan. New York v. Diamond, 379 F. Supp. 503 (S.D.N.Y. 1974).

6. Simultaneously, the Percy class, made up of unions, minority workers, and civil rights groups like the NAACP,[1] also sued the State and federal governments.[2] In this action, the class claimed that the Brennan memorandum and the New York Plan violated their civil rights under Titles VI and VII of the Civil Rights Act. Specifically, the class alleged that these plans failed to permit minority workers the opportunity for on-the-job training and

---

[1] The plaintiffs were Albert Percy, Manuel Meija and John Mercado. Only Mr. Percy remains alive.

[2] The plaintiffs filed the matter in the federal district court for the Southern District of New York ("S.D.N.Y.") and sued the U.S. Secretary of Labor, the United States Department of Labor, the Assistant Secretary of Labor for Employment Standards, the Director of the Office of Federal Contract Compliance and the Office of Federal Contract Compliance (federal defendants); the Governor of the State of New York, the Industrial Commissioner of the State of New York and the New York State Department of Labor (state defendants); and the Building and Construction Trades Council of Greater New York, the New York Building and Construction Industry Board of Urban Affairs Fund (Fund) and the New York Plan for Training, Inc..

apprenticeship programs. Plaintiffs sought declaratory relief and an injunction that ordered officials to abandon the plan. Percy, 384 F. Supp. 800.

7. Both actions were brought in the S.D.N.Y. and were handled by Judge Morris E. Lasker. Judge Lasker considered consolidating the two cases, but for purposes of expediting the City's case, he decided against it. Percy knew of the City's case and the decision because the cases were treated as joint cases. In any event, in July of 1974, Lasker decided the City's case and barred the withholding of federal funds to the City, authorizing the City to go ahead with the Mayor's Plan. Diamond, 379 F. Supp. 503.[3]

8. Later that year, in November of 1974, Judge Lasker issued a decision in Percy, restraining the State and federal governments from enforcing the Brennan memorandum and New York Plan "as to locally-administered, public construction sites which receive federal or state assistance as the case may be." Percy, 384 F. Supp. at 804. However, the Court never issued a judgment beyond this.

9. The Percy class essentially abandoned their case after receiving the preliminary injunction, and in 1977, Judge Lasker found that there were no longer any unresolved issues in the case. So, the action was disposed of in its entirety. Judge Lasker found that there was no sense in keeping the matter open solely for purposes of monitoring the defendants' behavior and held that if the defendants violated the '74 order, the class could seek to enforce it in a separate action. On May 9, 1977, the Court dismissed the action without prejudice. A copy of the unpublished decision is annexed hereto as Exhibit "C." Plaintiffs did not

---

[3] The New York Times covered the decision in an article published on July 26, 1974 entitled, "MINORITY JOB PLAN FOR CITY PROJECTS UPHELD BY COURT," available at https://www.nytimes.com/1974/07/26/archives/minority-job-plan-for-city-projects-upheld-by-court-us-barred-from.html (last visited on June 9, 2021).

4

file any additional motions or matters. Thus, the matter did not go to trial and did not have a "settlement" presented to or approved by the court.

### c. Attempts to Reopen the Matter in 2017-2018

10. After lying dormant for 40 years, Kernan appeared and attempted to reopen the matter and join the dismissed <u>Percy</u> with an action pending in the Eastern District of New York ("E.D.N.Y."): <u>Evans v. The Port Authority of New York and New Jersey, et al.</u>, No. l5 Civ. 3942. In 2015, Kernan filed the complaint in <u>Evans</u>, which alleged that two plaintiffs were a class of similarly situated individuals who had been denied their rights to "paid on-the-job apprentice training and employment in connection with public works construction contracts." They argued that, as a result, they had been deprived of the opportunity to "compete fairly for jobs based on ability," rather than on their status as racial and ethnic minorities. Plaintiffs sought apprenticeships and on-the-job training for the Class and claimed that using their job training programs was the "constitutionally correct" solution. <u>Evans v. Port Auth. of N.Y. & N.J.</u>, No. 15-CV-3942 (MKB), 2017 U.S. Dist. LEXIS 125386, *13 (E.D.N.Y. August 8, 2017).

11. In seeking to join the matters, Kernan claimed that <u>Percy</u> was still outstanding and that <u>Percy</u> and <u>Evans</u> were related actions based on "the same alleged misconduct by Defendants regarding training" with common questions of fact and law to justify joining the matters. In addition, Kernan sought to litigate the matter nationwide via a motion addressed to the federal Judicial Panel on Multi-District Litigation (JPMDL). <u>See</u> <u>Percy</u>, No. 73 Civ. 4279 (CM), (S.D.N.Y. Feb. 20, 2018), the unpublished decision of which is annexed hereto as Exhibit "D."

12. Since the original <u>Percy</u> action was closed for nearly 40 years and the files were not easily available, at the request of the JPMDL, then-Chief Judge for the S.D.N.Y.,

5

Loretta A. Preska, re-opened the matter to gain access to the archived records. Once the archived records were retrieved, the government moved to reclose Percy. The Court, under Judge P. Kevin Castel, granted the motion to dismiss, the Percy matter was, once again, closed, see Exhibit "D," and, in August 2017, the Court dismissed Evans on summary judgment.[4] Evans, 2017 U.S. Dist. LEXIS 125386, *13.

       13. Kernan appealed Judge Castel's decision to administratively close Percy v. Brennan, No. 73-Civ.-4279, after Judge Preska mistakenly opened it more than 40 years after its 1977 dismissal under Kernan's misrepresentations. However, on January 18, 2018, the Second Circuit summarily affirmed Judge Castel's decision and, unsurprisingly, found the appeal entirely meritless. See Percy v. U.S. Dept of Labor, No. 17-Civ-2273; see also Exhibit "D." Skirting the Circuit and District's rulings, Kernan filed a letter with current Chief Judge Colleen McMahon of the S.D.N.Y., along with a proposed order, requesting the Court issue a final judgment in favor of plaintiff and against Andrew Cuomo in Percy. Kernan claimed that the Clerk inadvertently "never entered a final judgment." See Exhibit "D."

       14. Kernan's proposed judgment declared that Judge Lasker, the originally presiding judge, directed that a judgment be entered in favor of Percy "in accordance with the proceedings...set forth in the Record at Docket #99, Appendix I, Volume 3, page #741." See id. Notably, Kernan failed to attach a copy of the record to his letter request. However, the last paragraph of the proposed judgment placed the date of the proceedings, as recorded in Docket #99, as May 9, 1977. That was the day Judge Lasker dismissed the action without prejudice, which Judge Castel cited when re-closing the matter decades later. It did not find in favor of

---

[4] The Court dismissed Evans without prejudice based on lack of standing and subject matter jurisdiction. The court found plaintiffs' reliance on Percy "inapposite and unpersuasive."

plaintiff whatsoever. Moreover, the original docket sheet, retrieved from archives, does not have any numbered entries, let alone 99 of them. See id.

15. Chief Judge McMahon issued a scathing decision, noting that Kernan was only attempting to piggyback onto Evans, l5 Civ. 3942. See id. Chief Judge McMahon also gave Kernan two days to provide the judgment he claimed was in Percy's favor and threatened to consider filing a grievance against him if he could not produce such a document. See id. Two days later, Kernan could only provide an affidavit from Percy objecting to the way his case was treated, a copy of which is annexed hereto as Exhibit "E," and the 1974 published decision, which, in no way, issued a judgment of any kind. Thus, Chief Judge McMahon re-closed Percy v. Brennan, refused to enter a judgment, and warned that "[a]ny further effort directed to this Court to re-open this matter will be denied summarily, and counsel will be subject to sanctions for frivolous litigation as well as a reference to the Court's Grievance Committee." See Percy v. Brennan, No. 73 Civ. 4279 (CM), (S.D.N.Y. Feb. 23, 2018), the unpublished decision of which is annexed hereto as Exhibit "F."

**B. The City's Investigation into Kernan, Percy, and Percy Jobs & Careers**

    **a. Percy Jobs & Careers and Oriska Corporation**

16. Percy Jobs & Careers[5] has several associated entities, including Oriska Corporation, Oriska Corp. General Contracting, Monument Agency, Inc., Economic Cornerstone, and Kernan Professional Group, LLP. All these entities are registered to or located at Oriskany Office Park, 1310 Utica Street, Oriskany, New York. And all these entities are connected to Kernan, who is listed as counsel for Percy.

---

[5] Percy Jobs & Careers was originally incorporated in 2013 as Oriska Jobs & Careers Corporation but changed its name to Percy Jobs & Careers in 2018. Percy Jobs & Careers is registered as a 501(c)(3) organization and its IRS NTEE classification code is B30: Vocational, Technical Schools within the Educational Institutions and Related

7

17. Oriska Corporation (a for-profit corporation) was incorporated in 1989 and is the parent company of Oriska Jobs and Careers as well as Oriska Insurance Company.[6] Oriska Corporation's incorporating documents lists its processing address as Kernan Professional Group LLP and Oriska Corporation's website states "Jim Kernan is former CEO of Oriska Insurance and the Executive Director of the non-profit employment development agency, Economic Cornerstone." See http://economiccornerstone.com/news-press/ (last visited on June 11, 2021); see also http://economiccornerstone.com/the-obamacare-challenge-recruiting-and-retaining-employees-without-reducing-profits/ (last visited on June 11, 2021); see also https://www.linkedin.com/in/jameskernan1/ (last visited on June 11, 2021).

b. **Kernan and Oriska Corporation**

18. Kernan is an attorney and Professional Engineer licensed to practice in New York. His law license is registered at 1310 Utica Street in Oriskany, the same address where the above listed corporations are registered. See Exhibit "G."

19. In 2010, Kernan was convicted in the N.D.N.Y. of mail fraud and wire fraud for permitting a convicted felon to use the Oriska Insurance Company to commit insurance fraud by soliciting Worker Compensation Insurance that it never provided. See United States v. Kernan, No. 08-CR-61 (FJS), 2009 U.S. Dist. LEXIS 17603 (N.D.N.Y. March 9, 2009); see also

---

Activities and its EIN is 37-1736195. A copy of the public records search for Percy Jobs & Careers is annexed hereto as Exhibit "G."

[6] The undersigned interviewed the former President of the Empire State Highway Contractors Association, Inc., to learn more about Oriska. However, due to the Law Department's widely reported server cyberattack, the undersigned cannot access her notes to recall his name. Nevertheless, based on this interview, the City learned that Oriska was originally founded by Kernan to serve one client: the Empire State Highway Contractors Association, Inc., an association of small closed-shop contractors, founded by Kernan's father and represented by Kernan. Oriska was created to provide benefits to this association at an open market rate. However, Kernan wrongfully opened those benefits up to others and began running an apprenticeship program, for which it sought U.S. Department of Labor ("DOL") approval. In 1998, the DOL refused to approve Oriska's apprenticeship program due to Kernan's fraudulent behavior, for which he was later convicted, and directed the Association to divest itself from Oriska. The federal government investigated Oriska until 2005 when the Association officially divested from Oriska.

United States v. Kernan, No. 08-CR-61 (FJS), 2009 U.S. Dist. LEXIS 19353 (N.D.N.Y. March 11, 2009). Kernan's sentence for the federal felony conviction involved a hefty fine, probation, and a ban from engaging in the practice of insurance. Moreover, as a result of his felony conviction and showing no remorse for the millions of dollars he defrauded from hard-working businesses, New York State suspended Kernan from practicing law for five years.[7] See Matter of Kernan, 73 A.D.3d 219 (4th Dep't 2010), annexed hereto as Exhibit "H."

20. Nevertheless, in 2018, Kernan attempted to represent and was subsequently disqualified from representing Oriska Insurance Company, the company he used to commit insurance fraud, in a N.D.N.Y. action, Oriska Insurance Co. v. Avalon Gardens Rehab and Health Care Center, LLC, No. 18-CV-1030 (DNH/DEP), 2018 U.S. Dist. LEXIS 198448 (N.D.N.Y. November 21, 2018). The Court held that representing an insurance company was tantamount to practicing the business of insurance, and Kernan was prohibited from representing Oriska or any other insurance company. Moreover, last year, in 2020, the N.D.N.Y. Board of Judges rescinded Kernan's admission to the district, and the Second Circuit affirmed. Kernan v. United States Dist. Court (In re Kernan), 818 Fed. Appx. 13 (2d Cir. 2020).

   c. **Kernan and Percy's Phishing Scheme**

      i. **Threatening Forged and Fraudulent Class Litigation**

21. In late May through early June of 2020, DDC, SCA, and at least 42 SCA contractors[8] received a letter, dated May 27, 2020, from Kernan, claiming to be Percy's counsel. See Exhibit "A." In these letters, Kernan represented that plaintiff "Albert Percy, As Class Representative," would be filing a federal class action against the letter's recipient in the

---

[7] Multiple other states disbarred Kernan, including Kentucky, West Virginia, and Pennsylvania. A copy of each of those decisions are annexed hereto as Exhibit "I."

E.D.N.Y., for "unlawful employment practices." In the letters, Kernan provided a link to a Dropbox folder[9] that contained a complaint entitled "Percy Lead Complaint EDNY,"[10] a document entitled "Apprenticeable Position Register revised 2020-05-20,"[11] and a separate folder labeled "Ver 2 – 2020-06-02."[12]

22. The folder labeled "VER2-2020-06-02" contains several subfolders labeled with the names of various New York State counties. These subfolders contain New York State Court summons (dated April 23, 2020 at the top and June 2, 2020 at the bottom) purportedly filed in various New York Counties against countless defendants, including multiple City agencies and contractors. None of the Summons were executed or filed when received but appeared to be legitimate civil actions, and inexperienced SCA contractors who received these letters expressed concern to SCA about being sued. Because of this concern, in June 2020, SCA retained outside counsel to give a presentation and educate the SCA contractors regarding civil litigation and how to distinguish legitimate litigation complaints from potential scams.

### ii. Cease-and-Desist Letters to Kernan

23. On July 24, 2020, the undersigned served Kernan with a certified letter, directing him to cease and desist from contacting City agencies and their contractors related to or

---

[8] All 42 contractors participated in SCA's Mentor Program and were MWLBEs (Minority/Women/Locally Based Enterprises).

[9] Available at https://www.dropbox.com/sh/oo8bojjxmildmic/AAAX8qPkW6DqWYq42t5KPJIqa?dl=0 (last visited June 9, 2021).

[10] Available at https://www.dropbox.com/sh/oo8bojjxmildmic/AAAX8qPkW6DqWYq42t5KPJIqa?dl=0&preview=1-+Percy+Lead+Complaint+EDNY.pdf (last visited June 9, 2021).

[11] Available at https://www.dropbox.com/sh/oo8bojjxmildmic/AAAX8qPkW6DqWYq42t5KPJIqa?dl=0&preview=2-+Apprenticeable+Position+Register+revised+2020-05-20.pdf (last visited June 9, 2021).

[12] Available at https://www.dropbox.com/sh/oo8bojjxmildmic/AACL5Y7FmO45qmhdC0B68YQWa/Ver 2 - 2020-06-02?dl=0&subfolder_nav_tracking=1 (last visited June 9, 2021).

in pursuit of these frivolous claims. A copy of the City's cease-and-desist letter, dated July 24, 2020, is annexed hereto as Exhibit "J."

24. According to their counsel, several DDC and SCA contractors informed the undersigned that they followed suit and served Kernan with cease-and-desist letters as well.

### iii. Kernan and Percy Notify Recipients of a Nonexistent Settlement

25. Nevertheless, from August 11 through September 29, 2020, Percy Jobs & Careers sent at least 19 additional letters, including a "Notice of Settlement" to SCA and DDC, bearing Kernan's signature with a state court jacket lacking any Court certification. A copy of one of these letters, including attached exhibits, is annexed hereto as Exhibit "K." While the notices had a State Court jacket, they cited federal law, represented that a settlement existed for "the Percy class," and notified them of their right to be part of the class. Yet, in small print in the footnotes, the letter noted that it was a "proposed Percy Class Action XVI." See Exhibit "K."

26. Moreover, the notices also misrepresented that,

> In 1974 in the landmark Percy v. Brennan Class Action, ("Case 73-cv-04279" or "Percy v. Brennan"), Albert E. Percy won the right for unskilled workers to receive paid on-the job apprentices training so they could benefit from good jobs while enjoying the pride, freedom and liberty to be able to compete for jobs and careers based on skills, not because of segregating criteria of skin color or ethnicity perpetuating unequal treatment, denying equal protection of the laws.

See id.

27. They went on to misrepresent,

> This action is grounded upon the final and enforceable Memorandum/Order of Judge Lasker reported at 384 F Supp 800 of

11

> November 8, 1974, and the Settlement agreement accepting Defendant New York State's offer of Executive Order 45 (Governor Carey's EO 45 (9 NYCRR 3-45)) in settlement to resolve the issues raised in the Case 73-cv-04279.

See id.

28. Each of these letters referenced specific SCA projects and stated that Albert Percy was a "class representative." However, Kernan and Percy misrepresent that Percy is the class representative for any current class, let alone the now defunct "Percy Class" of the 1970s. Indeed, he drops a footnote that reads,

> The Class certified in Percy v. Brennan, Federal District Court SONY [sic] Case 73-cv-04279, reported at 384 F. Supp 800, at Page 808, docketed in US 2nd Circuit Court of Appeals appeal No. 17-2274 Docket #97 page 0003 and Docket #99 page 640.

See id. However, as discussed above, the original case's docket did not number its entries.

29. Further, the letters included a purported "Notice of Settlement" in Percy v. Brennan and offered Percy Jobs & Careers' services to fulfill SCA's affirmative action requirements. They directed government contractors to sign up for their services and hire members of the "Percy Class" to fulfill their required equal employment initiatives, misrepresenting,

> We can provide your requirements for affirmative action in equal employment opportunity by providing members of the Percy Class to work for you in paid on-the-job apprentice training with related classroom instruction sponsored by us. By adopting the alternative employment practice of the Percy Program, enforced by 42 U.S.C. 2000 e-2 of the Civil Rights Act; Percy Jobs and Careers. Corporation, an IRC 501(C)(3) NON-PROFIT, will address your

12

> need for affirmative action for the significantly disadvantaged Percy Class, the class wanting to compete for jobs and careers based on skills, not skin color or ethnicity…
>
> The Percy Program can be provided to you at no additional cost to your present employment practice. For explanation and further demonstration of the Percy Program, please contact us through Jim Kernan, class counsel for the Percy Class, by email at jkernan@kernanllp.com or telephone at 212-697-9084.

See id.

30. The letters also include two websites. The first is www.percy.org, which appears to be the organization's website where government contractors are meant to sign up to his business model. See id. It clearly tries to make a profit by soliciting businesses to retain its services at "no *additional* cost," and nowhere on his website does it ask for donations, a standard characteristic of a nonprofit. While the organization has 501(c)(3) status, it has reported no earnings for 2017-2018, the only years it filed. See https://www.charitiesnys.com/RegistrySearch/show_details.jsp?id={80D4CB63-0000-C211-B589-B4B660A4966F} (last visited on June 9, 2021).

31. The second website in these letters is prefaced with the statement, "The Percy Program and other pertinent materials gathered, are demonstrated for review at website:" The website is: Percy.alternativeemploymentpractice.com (last visited June 9, 2021), which is an uploaded pdf version of the unfiled, unserved lawsuit Kernan sent via the Dropbox link. See Exhibit "K." It is presented through a pdf reader, making the document read like a book and appear legitimate.

32. The letters also requested that the recipient contact Kernan at the Kernan Professional Group LLC. Indeed, Kernan misrepresented that,

> Members of the Percy Class may be entitled to lost wages, lost opportunity, relief enforcing the demonstrated alternative employment practice, and damages for failure of the Settlement in the landmark case of Percy v. Brennan, among other causes of action. If you would like additional information or have questions, you can contact James M. Kernan, the attorney retained by Class Representative Albert E. Percy on behalf of the Percy Class...

See Exhibit "K."

33. This was false and misleading. As discussed above, the original Percy litigation, in addition to Kernan's recent 2017 and 2018 litigation, were all dismissed, and no Percy class or settlement exists. Rather, using these false statements, Kernan attempted to intimidate under threat of litigation DDC, SCA and SCA contractors into hiring Percy Jobs & Careers to fill apprenticeship positions with Percy school graduates. Their misconduct harassed DDC, SCA and SCA contractors despite Kernan being warned by the undersigned and others of their fraudulent behavior.

### iv. Fraudulent and Forged SUNY Association

34. In addition to this misconduct, the letters were on letterhead with a logo that read "Percy Jobs & Careers at Maritime College State University of New York." See id. It also listed the college's address in Throg's Neck, the Bronx, as its own. However, according to SUNY officials, including SUNY counsel, Penelope Ploughman, the only relationship SUNY Maritime ever had with Percy Jobs & Careers was an annual revocable permit with Oriska Jobs and Careers to rent a classroom to provide apprenticeship training to interested individuals in

various construction trades.[13] According to SUNY's Vice President of Finance and Management, Scott Dietrich, the annual rent for the classroom space was $30,000 per year, which was paid by Oriska Jobs and Careers. The actual training classes were given by ten SUNY faculty members working independently for Oriska Jobs and Careers, on their own time, for which they are paid as independent contractors and issued an IRS Form 1099 by Oriska Jobs and Careers.

35. Thus, according to SUNY Counsel, Ms. Ploughman, and SUNY's Investigative Counsel, Colleen Galvin, in or around November of 2020, Counsel for SUNY Maritime also issued a Cease-and-Desist letter to Oriska Jobs and Careers and directed them to refrain from their deceptive advertising practices. Despite actions by the Law Department and SUNY Maritime, Percy Jobs & Careers' website still promotes that it provides a diploma after its participants "graduated from the SUNY Maritime College in the Bronx's apprenticeship program." See http://percy.org/the-program/ (last visited on June 10, 2021) ("Working with the New York State Departments of Labor and Education, along with State University of New York (SUNY) Maritime College, the Percy Jobs and Careers' program for on-the-Job training and related classroom instruction allows training in the following skilled construction trades:…").[14]

**d. Reporting Kernan and Percy**

---

[13] In a 2017 fixnyc.org article about Oriska Jobs & Careers, claiming an association with SUNY Maritime, provides that the organization "operates under the Fitzgerald Act of 1937 (29 U.S.C. § 50 commonly known as the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50) under U.S. Department of Labor's Bureau of Apprenticeship and Training (BAT) and C.F.R. T. 29, Subt. A, Pt. 29 and Pt. 3." See "Trump's Apprenticeship Plan Has Model to Follow in NYC," available at http://fixnyc.org/trumps-apprenticeship-plan-has-model-to-follow-in-nyc/ (last visited on June 10, 2021). However, according to the DOL, these standards no longer exist and Oriska Jobs & Careers, as well as Percy Jobs & Careers has never been a DOL recognized apprenticeship program.

[14] As further evidence of Kernan's direct involvement in the operations of Percy Jobs & Careers, Kernan's YouTube channel, https://www.youtube.com/channel/UCGT4lslnnmntfMxNqkcw4hQ (last visited June 11, 2021), has the Percy Jobs & Careers logo, and the last video in the channel features Kernan interviewing a graduate of the apprenticeship program, who refers to the program as OJCC or Oriska Jobs & Careers Corporation, https://www.youtube.com/watch?v=7yUgyoFZ7iA (last visited June 11, 2021). Moreover, another video Kernan shares on one of his many websites is a news clipping featuring Kernan's work with OJCC. See https://www.youtube.com/watch?v=2Olf6UJ--c0 (last visited on June 11, 2021). It is clear that Kernan is more than Percy and Percy Jobs & Careers' counsel. He and Percy Jobs & Careers are one in the same.

36. Due to Percy and Kernan's fraudulent conduct, SCA's Office of the Inspector General ("OIG") conducted a thorough investigation along with the undersigned and found that Percy Jobs & Careers was improperly operating as a 501(c)(3). Thus, on March 3, 2021, OIG reported the organization to the New York Attorney General's Charitable Operations Unit, finding that "Kernan and Percy sent these letters and other documents in bad faith to confuse, harass, and extort New York City agencies and their contractors."[15] A copy of OIG's referral is annexed hereto as Exhibit "L." Moreover, this Office was in the process of preparing a complaint against Kernan to be filed with the New York State Appellate Division grievance committee(s) when it was alerted to his recently filed federal litigation.

    e. **Kernan's Recent Frivolous Litigation**

37. Last month, counsel for SUNY informed the undersigned that Percy, represented by Kernan, attempted to serve the University with litigation related to the Percy class in the E.D.N.Y.. Quickly, this Office discovered Your Honor's May 27, 2021 decision dismissing 29 federal claims filed by Kernan against countless defendants and ordering Kernan to show cause why the Court should not refer him to the disciplinary committee. See Percy, et. al. v. D & D Metal Work Inc., et. al., No. 21-cv-2314 (NGG)(SJB), Dkt. No. 39 (E.D.N.Y. May 27, 2021).

38. Only days later, general counsel for the New York City Department of Environmental Protection ("DEP") informed this Office that Kernan attempted to serve them with similar apparent litigation. The letter referred DEP to the aforementioned index number in addition to one other and included a waiver of service with a thumb drive.[16]

---

[15] However, on June 9, 2021, the OIG was informed that the AG never received it and only read it that day.

[16] Due to the Law Department's widely reported down server after a cyberattack, the undersigned is unable to attach this letter as an exhibit at this time. However, it can be provided at a future date if the Court desires.

39. Thereafter, in consultation with our in-house ethics counsel, we determined that the instant application was both necessary and warranted to discharge our reporting obligation under Rule 8.3(a) of the New York Rules of Professional Conduct and to assist the court by detailing the serious and pervasive nature of Kernan's misconduct.

40. Finally, on June 10, 2021, general counsel for New York City Housing and Preservation Department ("HPD") informed the undersigned that it, too, received a letter from Kernan related to one of the recent <u>Percy</u> matters in the E.D.N.Y., informing them that the action was dismissed.[17]

41. While the City has never been properly served or named in any of the state or federal litigation Kernan purports to bring on behalf of plaintiffs, the City is undoubtedly an interested party. Indeed, on numerous occasions over the last year, Kernan has attempted to victimize and defraud multiple City agencies and contractors during the worst crisis in over a century.

Bronx, New York
June 11, 2021

_____
KAMI Z. BARKER

---

[17] For the reasons stated above, the undersigned is unable to provide this letter at this time.